# Schuylkill Transportation Co. *v.* London Guarantee & Accident Co., Appellant.

*Insurance—Automobile insurance—Policy—Rider.*

1. In an action on a policy of insurance a judgment on a verdict for plaintiff will not be reversed because the trial judge admitted the policy in evidence without a rider belonging to it, where it appears that defendant in its own case showed an oral understanding which brought about the issuing of the rider by the company, the purpose of issuing it, its effect upon the original contract and defendant's liability for the sum sued for and found to be due.

2. In such case, plaintiff is entitled to recover where it is uncontradicted that there was a parol modification of the original contract, which resulted in the issuing of the rider, and that the rider, while apparently contradicting the policy, was intended for the benefit of the company so that it might keep its accounts in better shape, and was not intended in any way to affect the interests of the insured or the contract of insurance.

Argued November 25, 1925. Appeal, No. 348, Jan. T., 1925, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1924, No. 10449, on verdict for plaintiff, in case of Schuylkill Transportation Co. v. London Guarantee & Accident Co., Ltd. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on policy of automobile insurance. Before TAULANE, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,835.32. Defendant appealed.

*Errors assigned* were, among others, (1) admission of policy in evidence, quoting bill of exception, (2-4) various instructions, quoting record.

*Wm. W. Smithers,* of *Smithers, Lank & Horan,* for appellants.—Plaintiff declared on and offered in evidence a contract which it admitted had been modified prior to the alleged breach but without amending went to the jury on the contract as offered and was, therefore, not entitled to recover: Shenango Limestone Co. v. Ry., 262 Pa. 446; Stewart v. DeNoon, 220 Pa. 154; Willock v. Hamilton, 51 Pa. Superior Ct. 1.

The mistaken view of the law by the trial judge resulted in reversible errors in the charge on the questions submitted to the jury and the presentation of an erroneous theory of the whole case: Borham v. Davis, 146 Pa. 72; Ensminger v. Hess, 192 Pa. 432; Reeves v. R. R., 30 Pa. 454; Mastel v. Walker, 246 Pa. 65.

*Thomas Raeburn White,* of *White, Parry & Maris,* for appellee.

OPINION BY MR JUSTICE SCHAFFER, January 4, 1926:

This is an action on a policy of insurance indemnifying plaintiff from loss due to the damage of certain automobile busses which it owned and operated. In this controversy we are concerned with only one of the busses, designated as No. 2, which suffered injury in a collision with another motor vehicle. The verdict in the court below favored plaintiff and from the judgment entered defendant has appealed.

The whole controversy revolves around a rider to the policy, forwarded by the insurance company to plaintiff and received by it. When the policy was offered in evidence, appellant's counsel objected to its being received, because it was not accompanied by the rider which modified its terms. We are not required to say what the situation would have been had appellant stood fast to its position that the policy as offered, not being the entire written contract between the parties, could not be received in evidence, but defendant did not stand to its position. Following the offer and receipt in evi-

dence of the policy as originally written, defendant's counsel, in its own case, by its own witnesses, established the oral understanding which brought about the issuing of the rider by the company, the purpose in view in issuing it, its effect upon the original contract of insurance and defendant's liability for the sum sued for and found to be due; as to the amount of liability, if any, there was no dispute.

Reduced to its essential facts necessary to an understanding and determination of the controversy, we have the following situation: Defendant furnished its policy covering six automobiles belonging to plaintiff. The premium was paid in advance. The policy provided that it could be cancelled by the company upon five days' notice to the insured. As established by defendant's own witnesses, one of them the broker who negotiated the insurance, it was orally agreed that plaintiff should be given credit on the amount of the premium which it had paid, for such periods of time exceeding ten days as any of the busses were not in use. For several months following the issuing of the policy, the course of conduct between the parties was, that plaintiff would notify the company that a bus had been out of use for more than ten days and the company would then forward to plaintiff a credit memorandum covering the amount of the pro rata allowance due because of the nonuse of the bus. These credit memorandums were never paid in cash, but were entered on the books of the general agent of the defendant as amounts due the insured. Appellant, by its own witness, plaintiff's broker, also showed that after this course of conduct had been in operation for several months, one of its representatives came to him and said that the home office of defendant objected to the form of notice which was being sent out, covering the credits for nonoperation of the busses, and asked,—as a matter of book record, in order that the company might keep its accounts in better shape than they would keep them under the form which was being used,—to permit

the use of a new form, which provided that the policy should cease to cover any bus when not in use. The particular rider in question is worded: "In consideration of a return premium of Seventy One and 31/100 Dollars ($71.31), it is hereby understood and agreed that this policy ceased to cover bus #2." The witness said he accepted the new form on behalf of the insured after the representative of the insurance company had shown him a letter from it wherein it was stated that the new rider was merely for a matter of book record and not intended in any way to affect the interests of the insured or the contract of insurance; that it was understood between him and the company's representative that the busses were covered at all times when in operation, that the purpose of the modification was merely to effectuate the matter of bookkeeping to establish at the end of the year how much return premium the insured was entitled to, and, with this understanding, the new form of rider was accepted.

On May 27, 1923, as a result of notice received from plaintiff that its bus No 2 was out of use, the company issued to plaintiff and the latter received the rider in question. The arrangement was that when a bus went back into commission, plaintiff would give the insurance company notice that such was the fact and the rider would be cancelled. The bus was put back in commission on June 28th, and, by an oversight on plaintiff's part, notice was not given to the insurance company of that fact, and, on July 2d, the accident took place which caused the damage to the bus which is the subject of this suit.

It is the contention of the insurance company that the written terms of the rider control and therefore that it is not liable to plaintiff. We think this position cannot be approved. We are not dealing with a case where it is sought to alter the terms of a written contract of insurance by evidence produced by the insured which would vary its terms, but with one where the insurance

company itself has shown that there had been a parol modification of the written contract and just what, according to the understanding of the parties, that modification was and the result of it. This testimony as to the understanding of the parties about the new form of rider and its consequences is uncontradicted. Under the evidence as produced by appellant, the jury was warranted in concluding that the real contract between the parties was as its own witness said it was: the premium having been paid in advance, the contract covered the busses at all times when they were in operation, and, while the rider stipulated that the particular bus in question was not covered, this paper was only sent to the insured as a matter of record for the subsequent adjustment of credits due plaintiff on the premium which it had paid. That the understanding arrived at between the representatives of the insurance company and the plaintiff when the form of rider was changed was as the witness said it was, is borne out by the further fact that in some instances the rider was not issued until after a bus which had been out of service for more than ten days was put back in commission. This would negative the idea that the busses were not covered at all times when in operation. This is not a case where there was an absolute cancellation of the policy as to a particular bus; there is no question but that, had notice been sent that the bus was back in service, the rider would have been cancelled and the bus would have been restored to coverage.

As was said by the learned judge who tried the case in the court below, "Under the policy as written and issued to the plaintiff there could be no doubt as to the plaintiff's right to recover. The policy gives the defendant no right to cancel except as a whole upon five days' written notice. Therefore, the right claimed by the defendant to cancel the policy as to one of the busses only cannot be found in the written policy but must arise under some other agreement. That there was a parol agreement

supplementing the written policy was shown by the defendant. The contract between the parties consisted of the written policy and its modification by a parol agreement [which] was established quite completely by the defendant *as part of its case.* The defendant through its representative assured the plaintiff [when the change in the form of rider was made] that the original parol agreement should remain in effect so that the bus would at all times be covered by the policy and that the change was a matter of form only. It was upon the faith of this assurance that the plaintiff consented to the modification of the form of notice. To show that the change was a matter of form, the plaintiff clearly established that the defendant withdrew all the notices given under the old form and substituted notices complying with the new form. This was done after the transaction had been closed, and, of course, the substituted notices for closed transactions did not truthfully set forth the facts."

Our examination of the record and consideration of the assignments of error satisfy us that the result reached in the court below was a proper one.

The assignments of error are all overruled and the judgment is affirmed.